**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**


**RICHARD L. ARMSTEAD,**

              **Petitioner,**

**v.**                                                     **Civil Action No.: 3:21-CV-142**
                                                          **(GROH)**

**WARDEN PAUL ADAMS,**

              **Respondent.**


**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

On August 30, 2021, Petitioner, a federal inmate, acting *pro se*, filed a Petition for

Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging a prison disciplinary procedure.

ECF No. 1.[1]  Following the issuance of a Notice of Deficient Pleading [ECF No. 2],

Petitioner filed the Court-approved form for a petition pursuant to § 2241 on September

13, 2021.  ECF Nos. 4.  Following the issuance of a second Notice of Deficient Pleading

[ECF No. 9], Petitioner filed the properly completed Court approved petition form on

October 4, 2021.   ECF No. 11.

The matter is now before the undersigned United States Magistrate Judge for a

Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B)

and LR PL P 2. For the reasons set forth below, the undersigned recommends that the

---

[1]  All ECF numbers cited herein are from the instant case, 3:21-CV-142, unless otherwise noted.

Petition be dismissed without prejudice.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Prison Disciplinary Proceedings

While Petitioner was incarcerated at FMC Lexington, [2] on February 22, 2020, he

was charged with the prohibited offense of possession of a portable telephone.   ECF

Nos. 20-1 at 1, 2, 20-3 at 10.   On February 22, 2020, at approximately 10:01 a.m.,

Incident Report 3368908 was filed, which charged Petitioner with a violation of Prohibited

Act Code 108.   Id.   The incident report charged that:

> On February 22, 2020, at 9:00 AM, SIS Staff conducted a
> review of the informational download, which was received
> from the F.B.O.P. Forensics Department for ECN# LEX-20-
> 0054, One Black ZTE Verizon Cellular Telephone Model
> Z839, and SN: 320494783023, which was found during a
> search of the Bluegrass hosing unit.   During a review of the
> downloaded information it was determined, inmate Armstead,
> Richard, #06241-028, had in his possession and utilized this
> specific cellular telephone on multiple occasions.   Specifically,
> on 10/30/2019 at 3:04 PM, a SMS message and a call were
> made to telephone number [redacted], which is listed under
> inmate Armstead's Phone List and Email List in his TRUVIEW
> account.   On 11/11/2019 at multiple times, SMS messages
> were sent to number [redacted], which is listed under inmate
> Armstead's Visitor List on his TRUVIEW account.   On
> 11/14/2019 at multiple times, SMS messages were sent to
> number [redacted], which is listed under inmate Armstead's
> Phone List on his TRUVIEW account.   The only inmate at
> FMC Lexington, who the numbers listed about are associated
> with, is inmate Armstead.
>
> The fact the cellular telephone contained numerous telephone
> numbers, which are only associated with inmate Armstead's
> accounts, and the fact those numbers received SMS
> messages and calls while inmate Armstead was incarcerated
> at FMC Lexington, would indicate inmate Armstead had in his
> possession and utilized the cellular telephone from ECF#

---

[2] At the time of the events which Petitioner complains in the instant petition, he was an inmate at FMC Lexington, in Lexington, Kentucky, but he is now housed at Hazelton FCI in Bruceton Mills, West Virginia within the Northern District of West Virginia.

2

> LEX-20-0054.   This would be a violation of Code 108:
> Possession, manufacture, or introduction, of a portable
> telephone.

ECF No. 20-3 at 10.

Lt. Williams delivered Petitioner a copy of the Incident Report on February 22, 2020, which provided him notice of the DHO hearing.  Id. at 10 – 11.  On February 24, 2020, the Unit Discipline Committee (UDC) recommended referring the charge to the DHO for hearing.  Id. at 10.  On that same date Petitioner was provided a "Notice of Discipline Hearing Before the (DHO)".  Id. at 13.  On the form, which Petitioner signed, he indicated that he did not wish to have a staff representative at the DHO hearing, but did wish to call witnesses.  Id.  Petitioner was also given and signed the "Inmate Rights at Discipline Hearing" form.  Id. at 15.  The Discipline Hearing was held on March 5, 2020, at which time Petitioner again waived his right to have a staff representative assist him at the hearing.  Id. at 17.  Petitioner called a witness who testified "He didn't have anything to do with it.  It was a ZTE phone.  Armstead never used it."  Id.  In his defense, Petitioner stated, "I never used this phone.  I know I'm not the only inmate with those numbers."  Id.  The DHO Report notes that Petitioner "did not provide any documentary evidence for the DHO to consider.  He did not request video evidence during any stage of the discipline process."  Id.

Following the hearing, the DHO found that Petitioner committed the prohibited act of possession, manufacturing, introduction of cell phone, in violation of Code 108.  Id. at 18.  The DHO wrote in his report that he relied on: (1) the written statement in the form of an incident report provided by S. Wacsher, SIS Technician; (2) the statement of Petitioner during the investigation, including his statement of "no comment" before the Unit

3

Discipline Committee (UDC); (3) the statement of Petitioner at the Discipline Hearing; (4)

the statements made by Petitioner's inmate witness; (5) the downloaded information from

the phone; (6) the Truview information which showed two phone numbers used only by

Petitioner, and one of which was related to another inmate housed at FMC Lexington.  Id.

at 18.  Further, the DHO wrote:

> Upon weighing the evidence, I find the greater weight of the
> evidence supports you did possess a hazardous tool,
> cellphone, as described in section 11 of the report.  I
> considered your statement but it does not excuse you of the
> behavior.  You contend you never used the phone and that
> you are not the only inmate at Lexington who has those
> numbers on their account.  I considered the statement of your
> witness who stated you did not have anything to do with the
> phone and you never used it.  I did note one number listed
> was also on inmate [name redacted] account, that number
> was [redacted].  The other two numbers were not listed on any
> other inmate's account at Lexington.  Inmate [name redacted]
> statement did not outweigh the evidence being that you and
> him could have easily contrived this defense in an attempt to
> assist you in avoiding the consequences of your actions.  It is
> not reasonable to me that the two numbers which were only
> associated to you, that anyone else would call them other than
> you.  You[r] denial does not outweigh the evidence presented
> by the institution.

Id. at 18 – 19.  As a result of his conviction, Petitioner was sanctioned to 41 days loss of

good conduct time, 30 days of disciplinary segregation, and 6 months of loss of telephone

privileges.  Id. at 19.

**B.    Instant § 2241 Petition**

Petitioner's single ground for relief alleges that his Constitutional rights were

denied because "there is no actual proof that Mr. Armstead actually possessed a cellular

phone."  ECF No. 11 at 5.

Petitioner claims that he exhausted the grievance procedure and asserts that he

presented his claim to the prison's internal grievance procedure, but states that his claims were rejected on March 5, 2020.  Id. at 7.  Petitioner also asserts that he presented his claim to the Bureau of Prisons but states that his claim was denied.  Id. at 8.  Petitioner requests that the DHO decision be overturned, that the incident report be removed from his inmate file, and that 41 days of good conduct time be restored to him.  Id.

In his memorandum in support of his petition, Petitioner claims that there was insufficient evidence to convict him of possession of a cellular phone because he did not actually possess the phone.  ECF No. 11-1 at 1.   Further, Petitioner claims that the "Bureau of Prisons failed to give him fair notice of Inmate's Disciplinary Program Statement § 541.1," and that the Bureau "does not provide [for an] alternative form of possession such as constructive possession."  Id. at 3.  Petitioner also claims that another inmate was charged with a violation of Section 108 based on actual possession of the cellular phone.  Id. at 5.

Respondent filed a motion to dismiss or for summary judgment, with a memorandum and exhibits in support thereof, on November 16, 2021.  ECF Nos. 20, 20-1 through 20-5.  Respondent argues that: (1) prior to filing the instant action, Petitioner failed to all exhaust administrative remedies as to the instant claims [ECF No. 20-1 at 8 – 10]; (2) Petitioner's due process rights were not violated during his disciplinary proceedings because the incident report was delivered to Petitioner more than 24 hours in advance of the Discipline Hearing [Id. at 10 – 11]; and (3) the DHO's findings were based on sufficient evidence [Id. at 11 – 13].

On December 9, 2021, Petitioner filed a response, styled a "traverse" in response to the motion to dismiss, which asserted that the doctrine of constructive possession

exonerates him, but fails to cite to a case from the Fourth Circuit which supports his claim.[3]
ECF No. 21 at 1 – 2.  Further, Petitioner claims that he made multiple attempts to exhaust
his administrative remedies, and that the institutional mail system caused the delay in
exhaustion.   Id. at 3 – 6.   Additionally, Petitioner claims that any delay in filing his
administrative remedy was caused by his quarantine upon arrival at Hazelton on October
29, 2020, hospitalization on November 2, 2020, return to Hazelton on November 4, 2020,
and second quarantine.   Id. at 7.    In support of that claim, Petitioner submitted a

---

[3]  The Fourth Circuit has addressed the doctrine of constructive possession and held that:

If a disciplinary conviction for possession of contraband is based on the presence of
contraband in a particular location, the constructive possession rule provides "some evidence" of
guilt only when relatively few inmates have access to the area. Thus, if McClung were correct that
the record demonstrated that scores of other inmates in the unit had access to the area of his cell
in which the weapon was discovered, the constructive possession rule standing alone would be
insufficient to provide "some evidence" to support his conviction. But McClung is not correct.
Although he did produce evidence at the hearing to suggest deficiencies in correctional officers'
ability to monitor the unlocked cell doors at all times, the evidence as a whole tended to show that
gaining access to the interior of McClung's cell, and the area beneath the cell's desk, would have
been difficult for another inmate. McClung's cell was located in a particularly public area of the unit,
and the weapon was located in a particularly inaccessible area within that cell. Furthermore,
McClung provided no evidence that showed that any other inmate had actually gained access to
his cell or that he had requested that his cell be locked because he feared such occurrence. Given
this record, we certainly cannot say that the factual finding of the district court-that McClung's cell
was the "exclusive domain" of its occupants-was clearly erroneous. See United States v. Hill, 473
F.3d 112, 115 (4th Cir.2007) (noting that a factual finding is only clearly erroneous if the reviewing
court is "left with a definite and firm conviction that a mistake has been committed after reviewing
the entire record") (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
This situation differs markedly from those cases in which courts have found
the constructive possession rule provides insufficient proof of ownership to satisfy the "some
evidence" standard. For instance, Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir.2001), relied
upon by McClung, held that the constructive possession rule did not provide some evidence when
the contraband at issue was found in the kitchen area-an area accessible to 100
inmates. Cf. Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir.1992) (constructive possession rule
would provide some evidence if inmate was one of four with access).
We decline to hold today that an inmate's unlocked cell, simply by virtue of being unlocked,
becomes transformed into a common area akin to a kitchen or television lounge in which
the constructive possession rule has no application. The Due Process Clause does not require
continuous lock-down before allowing punishment for possession of contraband found in inmates'
cells. Therefore, since a dangerous weapon was discovered in a cell that was the "exclusive
domain" of McClung and his cellmate, the constructive possession rule provides the necessary
"some evidence" sufficient to sustain McClung's disciplinary conviction.

McClung v. Hollingsworth, No. 06-6699, 2007 WL 1225946, at *3 (4th Cir. Apr. 26, 2007).

Case 3:21-cv-00142-GMG   Document 29   Filed 04/21/22   Page 7 of 21   PageID #: 230

handwritten letter dated January 6, 2021, directed to a "Mr. Irvin" which requested verification of the reason for his untimely filing.  ECF No. 21-1 at 1.  That same document has a separate handwritten statement at the bottom of the page which reads, "I/M arrived at FCI Hazelton on 10/29/2020 on quarantine status.  Went to hospital on 11/02/2020, returned on 11/04/2021 and went back onto 14 day quarantine."  That notation is attributed to "J. Ervin, L1 Case Manager", initialed "J. E.", and is dated January 6, 2021.  There is no typewritten document to confirm this assertion, nor any record on official letterhead.  Further, Petitioner submitted what appears to be a statement about his health, including quarantine, which is initialed by "J. E." and dated January 26, 2021.  ECF No. 21-2.  Finally, Petitioner submitted a handwritten statement as an exhibit which asserts that the DHO was biased and prejudiced at the Discipline Hearing.  ECF No. 21-4.

Respondent filed a reply on December 13, 2021.  ECF No. 22.  Therein, Respondent argued that the government produced some evidence to support a finding of possession of the cellular phone under the constructive possession doctrine.  Id. at 1 – 3.  Respondent also cited to a portion of the SIS investigation which listed phone calls and messages made to numbers and emails which were listed in Petitioner's contacts on his TRUVIEW account.  Id. at 2.  Respondent argued that, "not only were there phone numbers in the device exclusively connected to the Petitioner, but the investigat[or] confirmed that the *majority* of phone numbers that were called from the cell phone were phone numbers only used by the Petitioner at FMC Lexington."  Id. (emphasis in original).

An Order and Roseboro notice was entered on January 26, 2022, which advised Petitioner of his rights and obligations to respond to file a response to the motion to dismiss or for summary judgment.  ECF No. 23.  Further the Order and Roseboro notice

provided, **"The Court notes that previously, on December 9, 2021, Petitioner filed a response to the motion to dismiss or in the alternative for summary judgment."** Id. (Emphasis in original).

On March 1, 2022, Petitioner filed a response in opposition to the motion to dismiss or for summary judgment.  ECF No. 28.  Therein, Petitioner asserts that the Respondent failed to identify any Fourth Circuit precedent to support the constructive possession finding made by the DHO.  Id. at 1.  Further, Petitioner contends that "the DHO never considered the constructive possession theory and under the incorrect analysis [it is] impossible to find the petitioner possessed this specific[ ] phone when he was never actually found in possession of such phone."  Id. at 3.  Further, Petitioner argues that he was one of at least two inmates who shared the same contact numbers in their TRUVIEW account, and that if one of those inmates was found to be in possession of a phone, the other inmate should not necessarily be found in possession of the same phone.  Id. at 5 – 6.

### III.    STANDARD OF REVIEW

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

**B.      Pro Se Litigants.**

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[4] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

---

[4]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

**C.      Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241**

A petition filed pursuant to § 2241 is the appropriate method to challenge a due process violation as part of a prison disciplinary proceeding.  Burgess v. Dunbar, 628 Fed. Appx. 175 (4th Cir. 2015).

**D.      Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their

claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

　"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which

a "fair-minded jury could return a verdict for the [party]."  Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

It appears to the Court that when substantively considered, Petitioner's claim is without merit.  However, the Court need not address the merits of Petitioner's claim, because he is not entitled to relief based on his failure to exhaust administrative remedies.

### A.    Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  "Federal prisoners must exhaust their administrative

remedies prior to filing § 2241 petitions.  Failure to exhaust may only be excused upon a showing of cause and prejudice."    McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)).    Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures.    Booth v. Churner, 532 U.S. 731, 741 (2001).    Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.    Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741).  "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524.

Pursuant to McClung, failure to exhaust may only be excused upon a showing of cause and prejudice.  In his petition, Petitioner claims that exhausted his administrative remedies. ECF No. 11 at 7 – 8.  Respondent's motion to dismiss or for summary judgment contended that Petitioner failed to exhaust his administrative remedies, and Respondent provided documentation to support that contention.  ECF Nos. 20-1 at 5 – 6, 8 – 10; 20-4, 20-5.    Petitioner's "traverse" claims that any failure to exhaust is excusable because he repeatedly attempted to exhaust his administrative remedies, and because the institutional mail system caused the delay in exhaustion.  ECF No. 21 at 3 – 6.  Finally, Petitioner claims that any delay in filing his administrative remedy was caused by his quarantine, medical treatment and second quarantine.  Id. at 7.  The documents provided by Petitioner to support his claim do not appear to be official documents, lacking typewritten notations, letterhead, a seal, a sworn statement, or any other indicia of reliability.  ECF Nos. 21-1 at 1, 21-2.

As recognized in <u>Carmona</u>, <u>supra</u>, which was cited by the Fourth Circuit in its opinion in <u>McClung</u>:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

<u>Carmona</u>, 243 F.3d at 634 (internal citations omitted).

The petition states that Petitioner exhausted his available administrative remedies. ECF No. 11 at 7 – 8.  However, the documents provided by Respondent show that although Petitioner attempted to complete the administrative remedy process, he failed to exhaust his administrative remedies.  Respondent filed the declaration of Misty Shaw, a paralegal at the Mid-Atlantic Region of the BOP, regarding Petitioner's Administrative Remedy History.  ECF No. 20-4.  Shaw's declaration is accompanied by exhibits that demonstrate Petitioner did not exhaust his administrative remedies as they relate to the DHO's decision.  ECF No. 20-5.  As described by Shaw and confirmed by the documents, Petitioner made four attempts to exhaust his administrative remedies:

1.    REMEDY ID: 1042214-R1[5] was filed on August 20, 2020, and was denied on October 10, 2020.  Petitioner had 30 calendar days from the date the Regional Director signed the response to file an appeal to the Central Office.  ECF No. 20-4 at 3.

2.    REMEDY ID: 1042214-A1 was filed with the Central Office on December 11, 2020, and was rejected December 22, 2020, because the appeal was untimely.  Petitioner was instructed he needed staff verification stating that the untimely filing was not his fault [Id. at 3].  Petitioner was further advised that he failed to provide a copy of the regional appeal response as required.  Id. at 3 – 4.

3.    REMEDY ID: 1042214-A2 was filed with the Central Office on January 26, 2021, and was rejected on February 6, 2021.  The rejection notice again instructed Petitioner that he failed to provide a copy of the regional appeal response as required.  Id. at 4.

4.    REMEDY ID: 1042214-A3 was filed on February 3, 2021, by the Central Office, and rejected on February 12, 2021, because it was untimely.  Id. Further, Petitioner was instructed that he needed to provide staff verification that the untimely filing was not his fault, and that his form needed to be legible.  Id.

---

[5]  Each administrative grievance is assigned a specific remedy ID.  The numerical portion of the Remedy ID before the hyphen is known as the case number.  Following the hyphen there is a submission ID comprised of one letter and one number.  The letter indicates which level of the BOP administrative remedy program has received the grievance.  The letter "F" indicates that the submission was received by an individual federal correctional facility.  The letter "R" indicates that the submission was received by a Regional office.  The letter "A" indicates that the submission was received by the BOP's Central Office.  Following those letters is a number which indicates the number of times an inmate has submitted the same request at the same level of the BOP grievance program.

A review of the attached Administrative Remedy Generalized Retrieval document shows that Petitioner did not file another administrative remedy after his remedies were rejected on February 12, 2021.  ECF No. 20-5.  Therefore, it appears that Petitioner has failed to exhaust all administrative remedies available to his claim.  Accordingly, Petitioner's claim may not be considered under § 2241, and this Court is without jurisdiction to consider his petition.  When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

### B.   Petitioner's Due Process Rights Were Not Violated[6]

Petitioner contends that his due process rights were violated during the prison disciplinary process, including the DHO proceedings held on March 5, 2020.  ECF No. 11-1 at 1.  Specifically, Petitioner claims that the DHO "violated his due process when he found by the greater weight of the evidence that the petitioner did in fact possess a hazardous tool." Id.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

> 1.   giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

---

[6]   Although the undersigned concludes that the Petitioner failed to exhaust all administrative remedies depriving this Court of jurisdiction to consider his petition, the Court will nevertheless address Petitioner's claims.

2.       providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;

3.       allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;

4.       if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case, permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a sufficiently competent inmate designated by staff; and

5.       providing impartial factfinders.

Id. at 564-566, 570-571.

In the present case, the Court finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons.  First, Petitioner received notice of the incident report on February 24, 2020, ten days before the DHO hearing.  ECF No. 20-3 at 13.  Second, the DHO Report includes several paragraphs which explain the specific evidence relied on to support the findings, including the statement of the SIS Technician who wrote the incident report, the statements of Petitioner and his witness, the downloaded information from the cellular phone, and the Truview information which showed phone numbers and contacts associated with Petitioner.  Id. at 18.  Third, Petitioner was offered the opportunity to call witnesses, which he did in addition to making a statement in his own defense.  Id.  Fourth, Petitioner is not illiterate, nor did the complexity of the issue make it unlikely that Petitioner could collect and present the evidence necessary for an adequate comprehension of the case; thus, Petitioner did not require the aid of a fellow prisoner or staff.  Nevertheless, Petitioner was offered but

18

declined staff aid at the hearing before the DHO.  Id. at 17.  Finally, the DHO was an impartial factfinder, William Sizemore, who was not the individual who authored the Incident Report.  ECF No. 20-3 at 18 - 19.

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidentiary basis" to support the decision.  Superintendent v. Hill, 472 U.S. 445, 455. (1985) ("due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457).  Determining whether there is some evidentiary basis to support a decision:

> Does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 455 - 56.

In this case, the Disciplinary Hearing Officer found Petitioner guilty of possession, manufacturing, introduction of a cell phone, in violation of Prohibited Acts Code § 108. The reasons listed by the DHO for his finding, included the statement of the reporting staff member in the Incident Report, Petitioner's witness's statement, documentary evidence from Truview records, and downloaded information from the cellular phone which was included in the SIS report.  ECF No. 20-3 at 18 – 19.  The DHO also considered the statement of Petitioner, but found the greater weight of the evidence supported Petitioner's conviction.  Id.

This Court finds that the evidentiary requirement standard enunciated in Superintendent v. Hill, supra, was met.  Therefore, the undersigned finds that the

Disciplinary Hearing Officer's decision is supported by some evidence and that the Petition should be denied.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 11] be **DENIED.**  It is further **RECOMMENDED** that Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment [ECF No. 20] be **GRANTED** and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE** based on Petitioner's apparent failure to exhaust administrative remedies.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

      **DATED:**     April 21, 2022

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE